211 P.2d 413

IDAHO COMPENSATION CO. v. HUBBARD.

No. 7541.

Supreme Court of Idaho.

Nov. 8, 1949.

Robert E. Smylie, Atty. Gen., J. N. Leggat, Don J. McClenahan, J. R. Smead, Donald A. Purdy, Asst. Attys. Gen., for appellant.

Whitla & Knudson, Coeur d'Alene, Ralph S. Nelson, Coeur d'Alene, for respondent.

HOLDEN, Chief Justice.

Respondent is an Idaho corporation authorized to write, and since May, 1933, has been writing, liability insurance, particularly workmen's compensation insurance. It appears that each year from 1939 to 1944, inclusive, respondent paid a tax of only one percent on its gross premiums income and that the insurance department accepted such payment and construed sec. 40-808, I.C.A., to mean respondent was required to pay only a one percent tax.

Thereafter, however, a dispute arose between respondent and the insurance commissioner of the state of Idaho as to whether respondent was required to pay a three percent tax under sec. 40-804, I.C.A., or only one percent on its gross premium income (under sec. 40-808, supra), the commissioner demanding respondent pay, and pursuant to demand respondent did pay, a tax of three percent for the years 1945 and 1946.

This action was brought for the purpose of obtaining a declaratory judgment construing section 40-808, I.C.A. (as amended, now sec. 41-808, I.C.), and to recover the sums of $14,624.73 and $20,373.45 gross premiums taxes for the years 1945 and 1946, respectively. Commissioner Hubbard demurred to respondent's complaint on the ground it did not state facts sufficient to constitute a cause of action. The trial court overruled the demurrer. The commissioner elected to stand on his demurrer. Thereupon findings of fact and conclusions of law were made and filed and decree entered thereon holding respondent was required to pay only a one percent tax, from which the commissioner appeals.

Section 40-808, I.C.A., as amended, now sec. 41-808, I.C. provided: [Sec. 40-808] "Any insurance company transacting business in this state having more than fifty per cent of its assets invested in bonds or warrants of this state, or bonds or warrants of any county, city or district within this state authorized by law to be issued, or in taxable property within this state, or in first mortgages upon improved, unencumbered real estate within this state, shall pay a tax of one per cent upon the premiums collected in this state on risks located in this state, in lieu of the tax provided in the preceding sections."

The decisive question presented for determination is, then: Did respondent have, during the years 1945 and 1946, respectively, "more than fifty per cent of its assets invested in bonds or warrants of this state, or bonds or warrants of any county, city or district within this state authorized by law to be issued, or in taxable property within this state, or in first mortgages upon improved, unencumbered real estate within this state"? If so, it is clear, respondent would be required to pay a tax of only one percent on premiums collected in this state on risks located in this state, in lieu of the tax levied by sec. 40-804, supra.

Respondent alleged in its complaint that in 1945 its total assets amounted to $1,092,873.23. That these assets were invested (excepting stocks, choses in action and accounts, not material here) as follows: $18,923 in bonds of counties and cities of this state; $33,665.66 in mortgages on improved, unencumbered real estate within this state, and $643,763.03 in United States bonds. Therefore, instead of having more than fifty per cent of its assets invested as required by sec. 40-808, supra (in order to be entitled to the reduced tax therein

provided for), respondent had less, the greater part of its assets being invested in United States bonds.

Respondent also alleges that in 1946 its total assets amounted to $1,325,963.25; that these assets were invested (excepting stocks, choses in action and accounts, not material here) as follows: $166,899.48 in bonds of counties and cities of this state; $39,101.15 on improved, unencumbered real estate within this state and $530,519.53 in United States bonds. Therefore, instead of having more than fifty per cent of its assets invested as required by sec. 40-808, supra (in order to be entitled to the reduced tax therein provided for), respondent had less, the greater part of its assets being also invested for the year 1946 in United States bonds.

But respondent contends that having paid a tax of only one per cent from 1939 to 1944, and the department of insurance having accepted such payment and construed sec. 40-808, supra, to mean it was required to pay only a one per cent tax, such construction should not be departed from. That section is not ambiguous and, while administrative construction carries great weight in the construction of an ambiguous statute, it is well settled it must be disregarded where, as here, it is both erroneous and inapplicable. Furthermore, administrative construction does not constitute judicial decision.

Respondent also contends the words "or in taxable property within this state," appearing in sec. 40-808, supra, present the question as to what is taxable property within the meaning of that clause, and in that connection directs attention to secs. 61-109, 61-101, and 70-114, I. C. A. Respondent points out sec. 61-109, supra, defines personal property as all goods, chattels, stocks, etc., and then adds: "and all other matters and things of whatsoever kind, name, nature or description, which the law may define or the courts interpret, declare and hold to be personal property under the letter, spirit, intent and meaning of the law, for the purposes of taxation, and as being subject to the laws and under the jurisdiction of the courts of this state."

Sec. 61-101, supra, to which respondent calls attention, provides: "All property within the jurisdiction of this state, not expressly exempted, is subject to assessment and taxation." And sec. 70-114, supra, also quoted by respondent, provides:

[Sec. 70-114] "Statutory terms defined. * * *

"1. * * *

"2. * * *

"3 The words 'personal property' include money, goods, chattels, things in action, and evidences of debt." * * *

These general definitions of personal property are of little or no value in construing a statute expressly designed for the purpose of levying a tax on premiums collected by insurance companies transacting business in this state. We are here con-

cerned with construing the above mentioned clause, "or in taxable property within this state", as the same appears in sec. 40-808, supra. Concerning that matter, we direct attention to the following pertinent provisions of sec. 40-806, I.C.A.: " * * insurance companies shall pay or cause to be paid * * * the tax herein required, which payment of tax when made shall be in lieu of all other taxes upon premiums and upon the personal property of such companies and the shares of stock or assets thereof: provided, that all real property, if any, of such company, shall be listed, assessed and taxed the same as real property of like character of individuals."

It is at once clear the words "or in taxable property within this state" (sec. 40-808, supra) when considered in connection with sec. 40-806, supra, means real property, not personal property, in that otherwise the above proviso would be meaningless and the legislature could not have intended that. And, furthermore, that the legislature intended the clause "or in taxable property within this state" to mean real property, not personal property, is further supported by the 1947 amendment (sec. 41-808, I. C.) whereby the legislature amended section 40-808, supra, to make the above quoted clause expressly cover real property by making it read "or in taxable *real estate* within this state". (Emphasis added.)

Respondent further contends the failure to include United States bonds in sec. 40-808, supra, constitutes a discrimination against such bonds, and that such failure amounts indirectly to taxing such bonds, arguing "You cannot any more indirectly tax a Government Bond by denying the personal exemptions if he owns it, than you can by levying a direct tax against it. It is just as much the collection of a tax from the individual to give to everyone who owns other securities an exemption but deny it to him who owns Federal obligations."

In Diefendorf v. Gallet, 51 Idaho 619, 642, 10 P.2d 307, 316, this court held:

"The state has the power to classify for the purposes of taxation, only limited by the rule that the classification must be reasonable and founded upon differences between the parties. The equality clause does not forbid reasonable classification. Discrimination through classification is said to violate that clause only where it is such as to preclude the assumption that it 'was made in the exercise of legislative judgment and discretion.' Stebbins v. Riley, 268 U.S. 137, 45 S.Ct. 424, 426, 69 L.Ed. 884, 44 A.L.R. 1454.

"The federal attitude toward the rights and powers of a state to reasonably adjust its system of taxation is best expressed in Bell's Gap R. Co. v. Commonwealth of Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 535, 33 L.Ed. 892, 895:

" 'The provision in the fourteenth amendment, that no state shall deny to any person

within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution.' "

There is no merit in the contention that the failure to include United States bonds in sec. 40-808, supra, constitutes a discrimination against United States bonds, nor is there any merit in the contention that such failure amounts indirectly to taxing such bonds. The classifications made for the purpose of taxation were clearly a reasonable exercise of legislative judgment and discretion, and well within the rule of Diefendorf v. Gallet, supra; and further, it should be kept in mind that the gross premium tax is not a property tax but is an excise tax.

It follows the judgment must be reversed and the cause remanded with directions to enter judgment in conformity with the views herein expressed, and it is so ordered. Costs awarded to appellant.

GIVENS, PORTER, TAYLOR and KEETON, JJ., concur.