312 P.2d 1050

**ALLIED VAN LINES, Inc., Appellant,**

v.

**IDAHO PUBLIC UTILITIES COMMISSION, Respondent.**

Matter of the Investigation of the Operations of Allied Van Lines, Broadview, Illinois.

No. 8522.

Supreme Court of Idaho.

July 2, 1957.

L. Charles Johnson, Pocatello, for appellant.

222

Graydon W. Smith, Atty. Gen., Edward Aschenbrenner, Wm. Roden, Asst. Attys. Gen., for respondent.

**PORTER, Justice.**

Section 61-802, I.C., was amended by Chapter 291, 1951 Session Laws, to read as follows:

"Permit required—Scope of permit— Commission may refuse permit.—It shall be unlawful for any motor carrier, as the term is defined in this chapter, to operate any motor vehicle in motor transportation without first having obtained from the commission a permit covering such operation.

"A permit shall be issued to any qualified applicant authorizing the whole or any part of his operations covered by the application made to the commission in accordance with the provisions of this chapter, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules and regulations of the commission thereunder, and that the proposed service, to the extent authorized by the permit, is or will be in the public interest, *provided that any motor carrier or a predecessor in interest shall have been in bona fide operation on January 1, 1952 over the route or routes or within the territory for which application is made and has so operated since that time, the commission shall issue such permit without requiring further proof that public interest will be served by such operation.*" (Emphasis supplied.)

Section 61-808, I.C., was likewise amended by Chapter 291 of the 1951 Session Laws, and now reads in part as follows:

"The commission may at any time, after a hearing had upon notice to any permit holder hereunder, when it shall be proven that such holder has violated or refused to observe any of the orders, rules or regulations of the said commission or any of the laws of the state of Idaho applicable to such permit holder, by its order duly entered, suspend, revoke, alter or amend any permit issued under the provisions of this chapter: * * *."

On January 2, 1952, appellant duly made application for a permit to operate motor vehicles in transportation of household goods over irregular routes over the en-

tire State of Idaho. Such application was made under the so-called "Grandfather Clause" contained in Section 61–802, I.C., being the part thereof emphasized by us. On January 3, 1952, respondent issued its Permit No. 1662 to appellant authorizing the transportation by appellant of household goods over irregular routes over the entire state.

Thereafter, by Order No. 3320, dated June 28, 1955, such permit was revoked. Upon application of appellant for reinstatement of such permit, a hearing was had and Order No. 3631 issued by respondent denying the re-issuance of such permit. Upon application of appellant for a rehearing, a rehearing was ordered and thereafter the respondent issued Order No. 3965 upholding the previous findings in the cause and denying re-issuance of the permit. Appellant has appealed to this court from Orders Nos. 3631 and 3965.

Appellant makes three assignments of error with numerous subdivisions of each assignment. These assignments of error are to the effect that the Public Utilities Commission did not regularly pursue its authority in making the challenged orders, and also attack the constitutionality of the "Motor Carrier Act," the same being the matters which may be considered on review in this court. Section 61–629, I.C. In order to determine whether the Public Utilities Commission regularly pursued its authority in the respects in which its actions are challenged by appellant, it is necessary to review the steps leading up to the issuance of such orders.

On May 3, 1955, respondent issued Order to Show Cause No. 101, the material part of which reads as follows:

"Whereas each of the below named motor carriers, holders of IPUC Permits, were issued their said permits originally under the so-called "Grandfather Clause" as provided in Section 61–802, Idaho Code, and

"Whereas there appears to be some question whether each of the said carriers is entitled to all the authority contained in its said permit as granted under the aforementioned "Grandfather Clause," and

"Whereas there appears to be some question as to whether each of the said carriers is operating over the whole of its route as is required by Section 61–805, Idaho Code.

"Order

"It Is Therefore Ordered that each of the below named motor carriers shall appear at a hearing at the time and place designated below; and

"It Is Further Ordered that each of the said carriers shall be prepared to submit proof of its operations under the authority contained in its said permit consisting of original freight bills or abstracts thereof and supplemented

by oral testimony on Idaho intrastate traffic handled by it for the years 1951, 1952, 1953 and the first six months of 1954;

\* \* \* \* \* \*

"Tuesday—May 24, 1955, at 9:00 A. M.—House Caucus Room, Statehouse Boise, Idaho

"Allied Van Lines, Inc. No. 1662"

On June 28, 1955, the Commission issued Order No. 3320, the material part of which reads as follows:

"Whereas said carriers failed to appear at the hearing or to otherwise notify the Commission of reasons for not complying with the aforementioned Order to Show Cause.

"Whereas such non-compliance with an order of the Commission is deemed sufficient grounds for revocation of permit in accordance with Section 61–808, Idaho Code.

"Order

"It Is Therefore Ordered that the IPUC permits held by the above named carriers [including Allied Van Lines, Inc.] be, and the same is hereby revoked and held for naught.

"It Is Further Ordered that the above named motor carriers [including Allied Van Lines, Inc.] shall cease and desist from all operations as a motor common carrier in intrastate operation in the State of Idaho."

Order to Show Cause No. 101 contains no direct charge that appellant is guilty of any act or omission by reason of which its permit should be canceled or revoked. The order merely states, (1), that there is some question as to whether appellant is entitled to all the authority contained in its permit and, (2), as to whether it is operating over the whole of its route. The order only requires that at the hearing appellant be prepared to submit proof of its operations both before and after the issuance of the permit.

■ The proceedings called for by such Order to Show Cause were non-adversary, were not for the trial of any charge against appellant, but were for the purpose of supplying information to the Commission. Upon the failure of appellant to appear and furnish the required information, the Commission was without authority to arbitrarily revoke appellant's permit and it was error to do so. Such failure might have been made the basis of a charge that the permit should be revoked under the procedure provided by Section 61–808, I.C.

■ A permit is a valuable property right and can only be revoked as provided by statute. There must be a definite charge that the permit holder has violated or refused to observe some order or regulation of the Commission or some applicable state law; the matter must be set for hearing and notice given; and proof must be adduced supporting the charge.

In State ex rel. Railroad & Warehouse Comm. v. Mees, 235 Minn. 42, 49 N.W.2d 386, at page 391, 27 A.L.R.2d 1197, at page 1205, the State Railroad and Warehouse Commission made a non-adversary investigation to secure information. In discussing same the court said:

"However, should the commission at some later date desire to issue an order under the provisions of § 216.21 adjudicating the rights of the participants to this investigation, it will, of course, be required to hold a formal quasi-judicial proceeding complete with notice, hearing, findings and order, right to appeal, and all other requisites of such a proceeding."

In Abrams v. Jones, 35 Idaho 532, on pages 544 & 546, 207 P. 724, at pages 726 & 727, this court said:

" * * * It is elementary that in any judicial or quasi-judicial proceeding, a pleading in the nature of an accusation or complaint must contain positive statements of the essential facts, and that it is insufficient where it merely states conclusions.

\* \* \* \* \* \*

"Due process of Law is not necessarily satisfied by any process which the Legislature may by law provide, but by such process only as safeguards and protects the fundamental, constitutional rights of the citizen. Where the state confers a license upon an individual to practice a profession, trade or occupation, such license becomes a valuable personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal."

On September 12, 1955, appellant notified the Commission that appellant's failure to comply with the order to show cause resulted from appellant not receiving notice thereof in time to appear at the scheduled hearing due to a mail confusion. Appellant requested a re-opening of the matter and a hearing for the purpose of furnishing the required information and for reinstatement of its permit. This request was granted by the Commission and the matter rescheduled for hearing.

No additional charges were made by the Commission prior to such hearing nor at any time during the course of these proceedings. Likewise, the Intervenors did not file any pleadings prior to such hearing or at any time during these proceedings. It therefore appears that there were no definite charges against appellant at any time in these proceedings which appellant could answer and thereby form an issue for trial.

At such hearing, appellant submitted evidence showing its method of operation and the extent thereof prior to the issuance

of its permit and likewise showing that its operations continued in the same manner and to the same extent after the issuance of such permit. Neither the Commission nor the Intervenors submitted any evidence at the hearing or at any time during the course of these proceedings.

After such hearing the Commission on December 30, 1955, issued its Order No. 3631. In such order the Commission found that appellant is an organization entirely composed of household goods carriers operating throughout the United States. That several of such carriers are domiciled in the State of Idaho and hold motor common carrier authority to transport household goods in intrastate commerce. That previous to January 1, 1952, when the Idaho Motor Carrier Act became effective, and subsequent thereto, appellant and its agent carriers in Idaho provided household goods carrier service in a somewhat dual capacity, that is, by billing and handling some shipments under the name of Allied, while other shipments were billed and handled under the names of the agents. That choice of the method of handling shipments was apparently at the convenience of the agent and that the purpose of such arrangement as given by appellant was to provide better service and fully utilize available equipment. That appellant owns no equipment but is dependent upon equipment owned and operated by its agents who furnish such equipment only on a partial basis.

The evidence shows without dispute that appellant leased its equipment from its agents; that it hauled numerous shipments both before and after the issuance of its permit, and that is was fit, able and willing to carry on the hauling authorized by its permit. There was no showing whatever that appellant ever refused a shipment.

The Commission concluded that the petition of appellant for the reinstatement of its permit had not been supported by adequate or sufficient evidence to justify issuance of any intrastate operating authority. The Commission then ordered that the petition for re-issuance of the permit be denied.

It will be noted that the Commission by its order made no findings of fact whatever on the question of the violation of its order to show cause by failure to appear and supply the requested information upon which ground the permit had been canceled; nor did the Commission make any order in connection with such question. Instead the Commission treated the proceedings as if an original application for a permit was the issue and predicated its order upon a conclusion that the operations of appellant prior to and after the issuance of its permit were not such as to entitle it to a permit under the "Grandfather Clause" of Section 61–802, I.C.

Without regard to procedure, the facts found by the Commission are not

228

sufficient to support a conclusion that the operations of appellant were not bona-fide and were not of such a character as to entitle appellant to a permit. The Commission was in error in making its order to the contrary; and thereby did not regularly pursue its authority. Applications of Intermountain Gas Company, 77 Idaho 188, 289 P.2d 933.

After the issuance of Order No. 3631, appellant asked for a rehearing which request was granted and a rehearing held in Boise. At such rehearing the appellant put on additional testimony as to its manner and method of operation both before and after the issuance of the permit and some additional evidence as to actual operations carried out by it. At the close of the hearing the Commission made its Order No. 3965. By such order the Commission upheld all its previous findings and conclusions in this matter and denied re-issuance of the permit to appellant.

It clearly appears from the various steps in this litigation leading up to the issuance of Orders Nos. 3631 and 3965 that the Commission did not regularly pursue its authority in such steps. Likewise both of such orders are erroneous and without proper foundation for their support.

It is unnecessary in the disposition of this matter to consider and determine the constitutionality of the Motor Carrier Act as challenged by appellant.

The orders of the Public Utilities Commission canceling Permit No. 1662 of appellant and refusing to reinstate such permit are hereby reversed and set aside. No costs allowed.

KEETON, C. J., and TAYLOR, SMITH and McQUADE, JJ., concur.