469 P.2d 745

James R. KENT and Gilbert Kent, Jr., dba
Kent Bros. Transportation, Plain-
tiff-Appellant,

v.

IDAHO PUBLIC UTILITIES COMMIS-
SION, Defendant-Respondent.

No. 10396.

Supreme Court of Idaho.

May 27, 1970.

Anderson, Kaufman, Anderson & Ringert, Boise, for plaintiff-appellant.

Robert M. Robson, Atty. Gen., and Larry D. Ripley, Asst. Atty. Gen., Boise, for defendant-respondent.

SHEPARD, Justice.

James R. Kent and Gilbert Kent, Jr., do business under the name of Kent Bros. Transportation under the authority of a motor carrier permit issued by the Idaho Public Utilities Commission which authorizes the transportation of specified products over irregular routes within the State of Idaho.

In 1952 Avery Trucking Company, Inc. was issued a motor carrier permit for unrestricted carriage throughout the State of Idaho. Avery has been adjudicated a bankrupt and Kent Bros. purchased the Avery permit from the Trustee in Bankruptcy.

Kent Bros. filed an application with the I.P.U.C. for transfer of the Avery permit to them. Since the Avery permit was issued for unrestricted carriage, it would, if transferred to Kent Bros., greatly expand their trucking operations. Various other trucking firms appeared and opposed the requested transfer of the Avery permit to Kent Bros. That opposition was primarily based on the grounds that Avery, during the time it held the permit, had not furnished the services authorized by the permit and the area of motor carrier operations within the State of Idaho was already so well served that the requested transfer would not be in the public interest.

The record discloses that Kent Bros. were advised by the I.P.U.C. to provide information regarding the past operations of Avery Trucking because the Avery permit might be subject to restriction under I.C. § 61–809 if Avery had intentionally failed to furnish the services authorized by the permit. The clarity and the extent of the Commission's advice is disputed by the parties.

Initially, Kent Bros. moved for a summary transfer and that motion was denied by the Commission. At a hearing held on Kent Bros.' request for transfer they testified as to their past activities under their motor carrier permit and their plans for using the Avery permit. At the hearing the Trustee in Bankruptcy and the attorney for Kent Bros. testified concerning the past activities of Avery in using its permit. However, no person having direct knowledge of Avery's past activities was produced as a witness. Certain records consisting mainly of Avery freight bills were produced. However, no witness was produced to verify the purported records of Avery and while those records were filed with the Commission, they were never introduced in evidence.

The Commission denied the request of Kent Bros. for the transfer of the Avery permit. It held that Kent Bros. had not provided adequate or sufficient information concerning the activities of Avery in the three years prior to the requested transfer and that such information was necessary for it to determine whether or not the requested transfer would be in the public interest. The Commission further held that the lack of any evidence excusing the failure of Avery to provide the authorized service for a period of three years amounted to "intentional failure" to provide service within the meaning of I.C. § 61–809. That section provides:

"No permit issued under the provisions of this chapter or any portion thereof may be sold, assigned or transferred, without written approval of the commission that such transfer is consistent with the public interest. A hearing shall be held in the manner, and subject to the conditions, prescribed in the statute governing the issuance of the original operating authority to carriers except when such sale, assignment or transfer is made to members of the permit holder's family or to himself when organized as another form of business. The commission may on its own motion or on objection or protest to a transfer restrict the scope of any permit upon a showing of an intentional failure to furnish the service authorized by such permit."

Kent Bros.' petition to the Commission for a rehearing was denied. Kent Bros. appeal to this Court from the order of the Commission and urge numerous assignments of error.

▆ It should be initially pointed out that this Court may not weigh the evidence considered by the Commission other than deciding whether or not it is competent and sufficient to support the Commission's order. The Commission's rulings will be reversed only when it appears that it has failed to follow the law or has abused its discretion. Application of Forde L. Johnson Oil Company, 84 Idaho 288, 372 P.2d 135 (1962).

Appellants' first major contention is that the Commission erred in applying I.C. § 61–809 in its amended form. The Avery permit was issued prior to the 1963 amendment

and appellants contend that to apply the statute as amended in 1963 would amount to retroactive application and an impairment of the obligation of the contract between the State and Avery Trucking. Appellants suggest that the right to transfer is a valuable property right which cannot be taken by retroactive legislation which changes the conditions and requirements for transfer.

We consider first whether the legislature intended the 1963 amendment of I.C. § 61–809 to apply retroactively. We agree that a statute should be applied retroactively only if the legislature has clearly expressed that intent or such intent is clearly implied by the language of the statute. Application of Forde L. Johnson Oil Company, supra; 1 Sutherland Statutory Construction, § 1963. We find that the wording of I.C. § 61–809 makes clear that it is designed to apply to prospective transfer of permits which had been granted prior to the 1963 amendment.

Appellants next urge that I.C. § 61–809, if applied retroactively, impairs the obligation of the contract between the State and Avery Trucking. Retroactivity in and of itself is, of course, not unconstitutional. If, however, substantive rights may be cut down by the retroactive effect of a statute, such construction should be avoided if possible. Appellants argue that the 1963 amendment to I.C. § 61–809 adds new matters to be considered by the Commission in determining whether to transfer a permit. They point out that those matters were not required to be considered by the Commission in a transfer hearing at the time of the original issuance of the Avery permit and that therefore Avery's capacity to transfer is diminished and its contractual power impaired. We do not agree. While the issuance of the original Avery permit constituted a contract between the State and Avery, it, as any other contract, had to be supported by consideration. That consideration on the one side was the issuance of the permit and on the other side the rendition of the service by Avery. As

in all contracts, if one party failed to render what was incumbent upon him, the other party has a remedy for that breach. In this case the Commission could have found that Avery failed to provide the authorized services and so breached the contract in failing to render its part of the consideration. The State and the Commission, on its behalf, have a remedy for such breach. Those remedies provided by the legislature are I.C. §§ 61–808 and 61–809. I.C. § 61–808 provides:

"The commission may at any time, upon complaint by any interested party, or upon its own motion after a hearing had upon notice to any permit holder hereunder, when it shall be proven that such holder has violated or refused to observe any of the orders, rules or regulations of the said commission or any of the laws of the state of Idaho applicable to such permit holder, or at the request of such permit holder, by its order duly entered, suspend, revoke, alter or amend any permit issued under the provisions of this chapter. In addition the commission shall have the power and authority to suspend, upon twenty (20) days' notice to the permit holder, such permit for failure to pay any license, fee, tax, or other revenue now or hereafter provided by law, unless such permit holder shall have filed a bond with the state of Idaho in double the amount of such license, fee, tax or other revenue, and the permit holder in good faith protests and litigates the legality of the imposition of such license, fee, tax or other revenue or the amount thereof, or fails to file an annual report. From any order, ruling or decision made by the commission any party aggrieved may appeal to such tribunal in the manner now or hereafter provided for appeals from the public utilities commission. The commission may also hold joint hearings, and sit, with other commissions and tribunals of other jurisdictions having similar powers relative to motor carriers in interstate commerce under any law now

existing or that may be enacted providing for such hearings."

In the event that a permit holder does not render the service authorized by his permit, remedial action by the Commission is authorized under I.C. § 61–808. If a transfer of a permit is requested prior to action of the Commission under the authority of I.C. § 61–808, then § 61–809 is applicable and authorizes the Commission to act.

■■ The change in the matters to be considered by the Commission when ruling upon a requested transfer in the 1963 amendment as compared with § 61–809 as it existed in 1952 is a valid exercise of the police power and a concern for the public good and is not therefore offensive. Union Dry Goods Co. v. Georgia Public Service Corporation, 248 U.S. 372, 39 S.Ct. 117, 63 L.Ed. 309 (1919); Idaho Power Co. v. Blomquist, 26 Idaho 222, 141 P. 1083 (1914). That rule of law is applicable to Avery and the appellant Kent Bros. can succeed only to the rights held by Avery. 4 Corbin of Contracts § 892 (1951).

■ Appellants next contend that I.C. § 61–809 violates the Equal Protection Clause of the Constitution in that it restricts only those permit holders who fail to render service *and* seek to transfer their permit while it does not restrict permit holders who fail to render service but do not seek a transfer. We find it obvious that there is no discrimination such as will support an equal protection argument since to adopt appellants' viewpoint would require us to look only at the provisions of § 61–809 and ignore the provisions of its companion statute, § 61–808.

■ We turn now to the actual hearing proceedings and the assignments of error arising therefrom. The Commission had jurisdiction over the matter of the requested transfer of the motor carrier permit. I.C. §§ 61–801 and 61–817. The Commission had full power and authority to order appellants to produce evidence of Avery's past activities. I.C. § 61–401. The

fact that subpoena power existed in the Commission to order such information from other sources does not negate their authority to order production by the appellants. It was the obligation of the appellants to produce this information and the appellants could have utilized the procedures of the Public Utilities Commission. By subpoena they could have taken the deposition of witnesses or compelled the attendance of witnesses or the production of documentary evidence at the hearing. I.C. §§ 61–602, 61–603 and 61–605. The record does not indicate that appellants utilized any such procedures nor did they make an affirmative showing of their inability to produce such evidence.

■ It is asserted that the Commission erred in refusing to allow the Trustee in Bankruptcy for Avery to testify as to the past activities of Avery. There is no showing that the Trustee had any first-hand knowledge of these past activities and indeed he could only have testified on the basis of hearsay. That such is prohibited is a well settled principle of law. 2 Wigmore on Evidence, § 657.

■ Appellants next urge that adequate notice was not given it of the requirement to furnish information concerning Avery's past activities and specifically that they could be required to furnish a witness who could verify Avery's business records. As appellants have said in their brief:

"The notice of hearing specified that: 'Applicant should be prepared to provide information regarding the past Idaho intrastate motor carrier activity of Avery Trucking Co., Inc., as said permit is subject to be restricted if there has been an intentional failure to furnish the service authorized by such permit.' "

Such notice of hearing and the Commission's orders of June 25 and September 9, 1968 indicate the adequacy of the notice given to appellants.

Appellants next contend that the Commission interpreted I.C. § 61–809 incorrectly in that the Commission shifted to the ap-

pellants the burden of proving that there had been no intentional failure to provide service by Avery. They further argue that the Commission erred in utilizing I.C. § 61-802, which requires the consideration by the Commission of the effect of the transfer on existing motor carrier permit holders.

The Commission's order of December 31, 1968, specifically recognized that it was not incumbent upon the appellants to show past operation as a part of its case. The Commission, however, felt the need for the information regarding Avery's past three years of operation and believed such was a critical factor in determining whether or not the transfer should be made. As hereinabove discussed, the appellants had proper notice to furnish such information and they refused to do so. We find no error in the action of the Commission. We likewise find no error in the consideration of the effect of the transfer on existing motor carrier permit holders. I.C. § 61-809 provides that the hearing on the requested transfer "shall be held in the manner, and subject to the conditions, prescribed in the statute governing the issuance of the original operating authority to carriers." I.C. § 61-802 sets forth the manner and conditions governing the issuance of the original operating authority to carriers. One of those conditions is that the Commission shall consider the effect of the proposed permit on existing carriers. It is apparent that when there has been a failure of a permit holder and a requested transfer of his permit to render the authorized service, the transfer is in effect the grant of a new permit insofar as its impact on existing motor carrier permit holders is concerned. A consideration of the various cited statutes makes apparent the recognition by the legislature of the above principle.

I.C. § 61-805 provides:

"Except as otherwise expressly provided, it shall be unlawful for any common carrier or contract carrier as defined in this chapter to fail or refuse to operate on the whole of the route except in cases of emergencies due to act of God or unavoidable accidents or casualties, or in case such route becomes impassable or in case it becomes necessary to make temporary detours.

"The failure of any common or contract carrier, as defined by this chapter, to register at least one (1) power unit required to be registered as provided in section 61-811, Idaho Code, in any calendar year as a contract or common carrier, shall be prima facie evidence of a failure to operate for that calendar year."

Appellants contend that the Commission erred in finding that failure to provide any reason for non-service for three years is tantamount to an intentional failure to provide service. The basis for the Commission's finding appears to be I.C. § 61-805. Appellants suggest that I.C. § 61-805 has no application to a transfer case and therefore the Commission's consideration of I.C. § 61-805 was erroneous. There is no showing that the Commission must view its authority only from certain selected statutes which may specifically by their language be applicable to transfer cases. Reasonable interpretations of general statutes may be made by the Commission itself since it is chosen for its special expertise. People of State of New York ex rel. New York & Queens Gas Co. v. McCall, 245 U.S. 345, 38 S.Ct. 122, 62 L.Ed. 337 (1917).

Finally, the appellants urge that the information before the Commission was sufficient to enable it to determine whether or not the transfer should be granted. As herein stated, we do not weigh the evidence, but leave that matter to the Commission. Application of Forde L. Johnson Oil Company, supra. We do, however, take note of the record which indicates the failure of the appellants to provide competent evidence as to the past activities of Avery Trucking. We therefore conclude that the record made in the instant case sustains the findings and conclusions of the Commission.

The orders of the Commission denying the transfer of Permit No. 1836 (Avery permit) to appellants herein is hereby affirmed. Costs to respondent.

McQUADE and SPEAR, JJ., concur.

DONALDSON, Justice, dissenting, in which McFADDEN, Chief Justice, concurs.

I dissent from that portion of the majority opinion which in effect places upon the appellant, the applicant for a transfer of a motor carrier permit, the burden of producing evidence that the prior holder, the transferor, has furnished services as authorized by such permit. I feel that this interpretation of I.C. § 61–809 is wrong and is a denial of due process. This Court in Allied Van Lines v. Idaho Public Utilities Commission, 79 Idaho 220, 312 P.2d 1050 (1957) and Grover v. Idaho Public Utilities Commission, 83 Idaho 351, 364 P.2d 167 (1961) stated that an order to show cause proceeding was insufficient to deprive a permit holder of his permit. This Court in these cases held that there must be a definite charge, the matter set for hearing, notice given and proof must be adduced supporting the charge before a permit could be revoked under I.C. § 61–808. All of these requirements should apply equally to a hearing under I.C. § 61–809. In this case the requirements were met except proof supporting the charge. In Arrow Transportation Co. v. Idaho Public Utilities Commission, 85 Idaho 307, 379 P.2d 422 (1963), this Court held that before a permit may be altered or revoked that not only must a hearing be held upon proper notice but that it must be proved that the holder has violated or refused to observe some order, rule or regulation of the commission or some law applicable to the permit holder and that these are jurisdictional requisites. The same rule should apply with respect to restriction of scope of a permit in transfer provisions. Although an administrative construction of an ambiguous statute carries great weight, it must be disregarded where it is erroneous

and inapplicable. Idaho Compensation Co. v. Hubbard, 70 Idaho 59, 211 P.2d 413 (1949). Further where the language of the statute is unambiguous a clear expressed intent of the legislature must be given effect and it is no occasion for construction. In re Potlatch Forests, 72 Idaho 291, 240 P.2d 242 (1952); Tway v. Williams, 81 Idaho 1, 336 P.2d 115 (1959); State v. Lawler, 81 Idaho 171, 338 P.2d 264 (1959); State v. Riley, 83 Idaho 346, 362 P.2d 1075 (1961); State v. Prince, 64 Idaho 343, 132 P.2d 146 (1942); Blue Note, Inc. v. Hopper, 85 Idaho 152, 377 P.2d 373 (1962); Knight v. Employment Security Agency, 88 Idaho 262, 398 P.2d 643 (1965); Roe v. Hopper, 90 Idaho 22, 408 P.2d 161 (1965). In my opinion there is no ambiguity in the last sentence of I.C. § 61–809 which states:

"* * * The commission may on its own motion or on objection or protest to a transfer restrict the scope of any permit upon a showing of an intentional failure to furnish the service authorized by such permit."

This sentence authorizes a restriction in the scope of the permit upon a motion or objection being made for intentional failure to render the services authorized by the permit. Thus the requisite showing of an intentional failure to furnish the services authorized clearly lies with the commission or with the person filing an objection or protest to the transfer. The burden of proof is on the party asserting the affirmative of an issue before an administrative tribunal. See 2 Am.Jur.2d 197, Administrative Law § 39; Walker v. San Gabriel, 20 Cal.2d 879, 129 P.2d 349 (1942); Philadelphia Co. v. Securities & Exchange Commission, 84 U.S.App.D.C. 73, 175 F.2d 808 (1948); Alaska Alcoholic Beverage Control Board v. Malcolm, Inc., Alaska, 391 P.2d 441 (1964).

This erroneous construction of I.C. § 61–809 is further compounded by the Idaho Public Utilities Commission's presumption that inability to prove that a particular commodity has been transported during the past three years constitutes an intentional

failure to render the service authorized with respect to that commodity. It could well be that no shipper requested that the particular commodity be shipped by the carrier during the past three years and thus there would be no intentional failure and yet under the I.P.U.C. construction of the statute the permit would be limited. It should be noted in this case that the transferor, the trustee in bankruptcy, appeared, testified and furnished a list of commodities and the freight bills as requested by the commission. If the commission did not think that this was sufficient evidence or was not properly authenticated, it should have continued the hearing and used its subpoena power to produce the documents and records and attendance of witnesses having knowledge thereof from the bankrupt Avery Trucking Co. or given the appellant an opportunity to do so. I feel that the decision of the Idaho Public Utilities Commission should be reversed with instructions to the commission to have a further hearing for the production of the documents which the commission feels are necessary and to give the appellant an opportunity to rebut this evidence if it so desires.