CONSOLIDATED FREIGHTWAYS COR-
PORATION OF DELAWARE et al.,
Plaintiffs,

v.

UNITED STATES of America
and
Interstate Commerce Commission,
Defendants,
and
Nielsen Transfer & Storage Company
et al., Intervenors.

Civ. A. Nos. 4-65-31-4-65-42 and 4-65-50.

United States District Court
D. Idaho, E. D.

Jan. 29, 1968.

Maurice H. Greene, Boise, Idaho, for plaintiffs.

Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, and Manny H. Smith, I.C.C., Washington, D. C., for defendants.

Kenneth G. Bergquist, Clemons, Skiles & Green, Raymond D. Givens, Givens, Givens & Manweiler, Boise, Idaho, for intervenors.

MEMORANDUM DECISION

Before KOELSCH, Circuit Judge, and THOMPSON and McNICHOLS, District Judges.

PER CURIAM:

These thirteen actions have been, by stipulation, consolidated for determination as, for all practical purposes, the legal questions and factual situations are identical.

Plaintiffs are corporations engaged in transportation of property in regulated interstate and foreign commerce as motor carriers.

Defendant, Interstate Commerce Commission (herein referred to as the I.C.C. or the Commission) is an agency of the defendant, United States of America, and is vested with authority under the

Interstate Commerce Act (herein called the Act) to regulate the operation of the plaintiffs as common carriers.

Intervenors are thirteen individual common carriers by motor vehicle operating solely in one state (Idaho).

By the complaint, plaintiffs ask this Court to annul, enjoin and set aside an order of the I.C.C. granting individually to the thirteen intervenors certificates of registration based on the so-called "grandfather" clause of Sec. 206(a) (7) of the Act (49 U.S.C.A. § 306(a) (7)) as amended October 15, 1962.[1]

Jurisdiction of this three-judge district court rests on 49 U.S.C.A., Sec. 17(9); on 28 U.S.C.A., Secs. 1336, 2284 and 2321 through 2325; and on 5 U.S. C.A., Sec. 1009.

It is undisputed that for some years prior to October 15, 1962, the date of amendment to Sec. 206 of the Act, the intervenors were common carriers by motor vehicle operating solely within the single State of Idaho and not controlled by, controlling, or under common control with any carrier engaged in operations outside of the State of Idaho.

The Act, prior to the 1962 amendment referred to, required that motor common carriers operating in interstate and foreign commerce obtain from the Commission a certificate of convenience and necessity before instituting such carriage. A factual hearing after appropriate notice to affected competition was required. However, an exception to this requirement was provided as to some intrastate motor carriers. This exception became known in the trucking industry as the "Second Proviso". The Second Proviso was found in Sec. 206(a) (1) of the Act prior to amendment in October, 1962.[2]

Again it is not disputed that, during the period from 1957 to October of 1962, the intervenors availed themselves of the exception permitted by the Second Proviso. The record contains authenticated copies of representative filings by the intervenors to which were attached copies of the State of Idaho permits issued by the Idaho Public Utilities Commission (herein referred to as the Idaho Commission, or the I.P.U.C.). It is likewise conceded that the I.C.C. accepted these filings which had the effect of

1. 49 U.S.C.A. § 306, as amended October 15, 1962, in pertinent part, reads as follows:

"* * *

"(7) (A) In the case of any person who or which on October 15, 1962, was in operation solely within a single state as a common carrier by motor vehicle in intrastate commerce * * *, and who or which was also lawfully engaged in such operations in interstate or foreign commerce under the certificate exemption provisions of the second proviso of paragraph (1) of this subsection, as in effect immediately before October 15, 1962, * * * the Commission shall issue to such person a certificate of registration authorizing the continuance of such transportation in interstate and foreign commerce if application and proof of operations are submitted as provided in this subsection.

"(B) * * * A notice of intent to engage in interstate and foreign operations accompanied by certified copies of effective, lawfully issued or acquired State certificates filed with the Commission as evidence of authority to operate in interstate or foreign commerce under the provisions of the second proviso of paragraph (1) of this subsection, as in effect immediately before October 15, 1962, shall be *conclusive* proof that the applicant is lawfully engaged in interstate and foreign operations and the scope thereof." (Emphasis added)

2. "* * * AND PROVIDED FURTHER, that this paragraph shall not be so construed *as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this Chapter.*"

authorizing the intervenors to operate under the exemption of the Second Proviso.

The principal thrust of the plaintiffs' contention is that the Idaho permits, held by the intervenors prior to October 15, 1962, copies of which had been filed with the I.C.C. under the Second Proviso procedures, were not certificates of convenience or necessity but were permits based on a determination of "public interest."

During the time in question the Idaho statutes authorized the issuance of permits for intrastate carriage to common carriers where the same would be in the public interest. Plaintiffs contend, with what appears to us to be considerable merit, that the Idaho Supreme Court has consistently held that the requirements of the "public interest" test were different from those of the "public convenience and necessity" tests.[3] This being true, plaintiffs say, intervenors were never able to bring themselves within the requirement of the exemption afforded by the Second Proviso.

However, the view we take of the matter makes it unnecessary for us to consider the status of the state law in this area or the interpretation thereof by the Supreme Court of Idaho.[4]

■ Congress has, in our opinion, established a controlling policy. When the intent of Congress is clearly perceived the courts are obliged to give effect to that intent.[5]

A perusal of the legislative history preceding the amendment of Sec. 206 of the Act in October, 1962[6] leaves us with an abiding conviction that all carriers operating then under the Second Proviso were to be protected by the "grandfather" clause placed in the amendment. The filing of a notice of intent as provided in the statute was made *"conclusive"* proof that the applicant was lawfully engaged in interstate and foreign operations immediately prior to the enactment of the amendment. An applicant so lawfully engaged was by the amendment to be granted like continuing rights upon application.

No useful purpose would be served by extended quotations from the legislative history leading to the adoption of the amendment to Sec. 206, the interested reader is referred to the debates and reports cited under footnote 6, above. We will content ourselves with a résumé of the same as it bears on the Congressional intent.

It seems clear that certain abuses had grown up as a result of the Second Proviso registration provision. The 1962 amendment to the Act was intended to cure those abuses. The Second Proviso, as such, was eliminated, and a separate

---

3. See, e.g. Malone v. Van Etten, 67 Idaho 294, 178 P.2d 382 (1947); Application of Bermensolo, 82 Idaho 254, 352 P.2d 240 (1960); Application of Forde L. Johnson Oil Company, 84 Idaho 288, 372 P.2d 135 (1962).

4. We are not unmindful of the recent holding of a three-judge district court in the adjoining sister state of Washington. Black Ball Freight Service et al. v. United States, D.C., W.D.Wash., S. Div., 266 F.Supp. 287, dated April 16, 1967. In its opinion the court expressly noted that "During argument all counsel agreed and we hold the stated contention presents a question of law, to be determined upon our examination of the pertinent Washington State statutes, regulations and Supreme Court decisions

* * *." In the case before us no such restriction was placed upon the scope of inquiry. We regard this difference as material.

5. Thompson v. United States. 246 U.S. 547, 38 S.Ct. 349, 62 L.Ed. 876.

6. (a) 87th Congress, 2nd Session, H.R. 1090, U.S.Code and Administrative News, pp. 3165–3168.
(b) Vol. 107 Congressional Record (87th Congress, 1st Session) Senate, p. 12686 et seq.
(c) Vol. 108 Congressional Record (87th Congress, 2nd Session) House, pp. 1355 et seq., pp. 20583, et seq.; Senate, pp. 6790, et seq., pp. 12686 et seq., and pp. 21706, et seq.

paragraph[7] set up as part of the amendment. This paragraph set out with specificity the procedure to be followed and the requirements to be met by intrastate carriers operating in a single state in desiring to obtain interstate and foreign commerce rights. The weakness of the former Second Proviso was corrected by spelling out the requirements of proof to be furnished, the extent of the rights to be obtained, and by giving broad supervision and control to the I.C.C.

Certain House members were concerned with the effect of the more stringent requirements and increased control on small carriers already qualified and operating under Second Proviso exemptions. While "grandfather" rights to such carriers was always contemplated in the amendment, there was apprehension expressed that, upon reapplication, the small carriers might run into trouble. It was feared that extensive and expensive hearings would be required and that delay would be experienced as the large interstate carriers would be expected to vigorously oppose registrations. Originally the Senate version of the amendment provided that "A notice of intent to engage in interstate and foreign commerce accompanied by certified copies filed with the Commission as evidence to operate in interstate or foreign commerce under the former provision of the Second Proviso * * * shall be *prima facie* proof that the applicant is lawfully engaged in interstate and foreign operations and the scope thereof." (Emphasis supplied) The House Committee, however, did not feel that even this was sufficient to protect the interest of the existing single state carrier with Second Proviso exemption rights. Among other substitute provisions, the House insisted that the notice and filing be *"conclusive* proof that the applicant is lawfully engaged in interstate and foreign operations and the scope thereof." (Emphasis supplied)

During the debates it was made clear that the change from *"prima facie"* to "conclusive" was "the heart of the whole operation insofar as the grandfather rights are concerned."

After the House amendments were presented to the Senate, a joint conference was held and the House amendments generally prevailed. The "conclusive proof" provision became the law.[8]

■ We are constrained to hold that the 1962 amendment to Sec. 206 of the Act clearly reflects a legislative intent to provide that all motor carriers then operating in good faith under the Second Proviso at the date of the amendment were given an incontestable right to recertification. That those so operating under a Second Proviso exemption are "lawfully so engaged in such operation" as contemplated by the statute is conclusively proved by filing of notice of intent accompanied by certified copies of the same instruments previously required under the Second Proviso procedure. The status quo was to be preserved as to existing single state carriers and they were insured of a reissuance of new registration upon application. As to prospective single state applicants, the new requirements and procedures were to be applicable.

■ Each of the intervenors, having Second Proviso interstate rights, effective on October 15, 1962, and having filed the notice and other documents required, were entitled, without further proof, to certificates of registration to be issued to them by the defendant Commission.

The orders sought to be reviewed were within the statutory authority of the Commission and are based on substantial evidence. The pertinent law was properly applied. No hearing of the plaintiffs' protest was required.

Plaintiffs' prayer asking that the said Orders be annulled, enjoined and set

---

7. 49 U.S.C. § 306(a) (6).

8. See footnote No. 1, supra.

aside is without merit and must be denied.

It follows that plaintiffs' complaint in each case should be dismissed with prejudice. No costs to be allowed.

It is so ordered.