542 P.2d 70

**Merlyn HARTWIG et al., Protestants-Appellants,**

**v.**

**Stanley R. PUGH and Ronald W. Pugh, dba Pugh Brothers Construction, Applicants-Respondents,**

**and**

**Idaho Public Utilities Commission, Respondent.**

**No. 11781.**

Supreme Court of Idaho.

Nov. 7, 1975.

Michael G. Brady, Moffat, Thomas, Barrett, & Blanton, Boise, for protestants-appellants.

Gary L. Montgomery, Sp. Asst. Atty. Gen., Boise, Conley Ward, Asst. Atty. Gen., Boise, for respondent I.P.U.C.

Paul Boyd Mosley, Mosley & Hutchinson, St. Maries, for applicant-respondent Pugh.

McQUADE, Chief Justice.

This appeal is from an order of the Idaho Public Utilities Commission granting a motor common carrier permit to respondents Stanley R. Pugh and Ronald W. Pugh, dba Pugh Brothers Construction (hereinafter respondents), to haul sand, gravel and aggregates thereof over irregular routes within Idaho north of the Salmon River. Respondents own and operate a rock hauling business based in St. Maries.

Respondent Ronald W. Pugh has several years experience in dump truck operations and had operated in business with his brother for 3 years preceding their application in 1974 for a motor common carrier permit. The Commission scheduled a hearing on respondents' application, following which appellants, holders of IPUC motor common carrier permits, filed notices of protest. Prior to the hearing, respondents amended their application by expanding the territory and reducing the variety of commodities for which they sought authorization. Respondent Ronald W. Pugh testified at the hearing on the amended application about respondents' business experience, stable financial position, responsible liability coverage, sound equipment and repair facilities, and about respondents' present type and extent of trucking activities. Respondents introduced testimony from four witnesses with respect to respondents' reputation for excellent service, and the existing and anticipated demand for the service proposed. Appellants were present at the hearing and conducted cross-examination of respondents' witnesses. Appellants introduced no evidence on behalf of their protest.

The Commission granted respondents authorization to serve that area of Idaho

north of the Salmon River as common carriers, but limited the service authorized to the hauling of sand, gravel, and aggregates. This appeal was taken from the Commission's orders granting the permit and denying appellants' petition for rehearing.

Appellants assign the following as error: (1) The Commission's finding that respondents were fit, willing and able properly to perform the service proposed; (2) The Commission's finding that the service proposed by respondents is or will be required by the present or future public convenience and necessity; (3) The Commission's failure to find that existing motor common carrier permit holders would adequately serve any public demand for the service proposed; (4) The Commission's grant of authority to respondents to serve that area of Idaho north of the Salmon River as requested in respondents' amended application; and (5) The Commission's denial of appellants' petition for rehearing.

Respondents sought, and the Commission granted, a motor common carrier permit as required by the Motor Carrier Act, Chapter 8 of Title 61 (§ 61–801 et seq.), Idaho Code. Section 61–802 sets the following requirements for issuance of a motor carrier permit:

"It shall be unlawful for any motor carrier, as the term is defined in this chapter, to operate any motor vehicle in motor transportation without first having obtained from the commission a permit covering such operation.

A permit shall be issued to any qualified applicant authorizing the whole or any part of his operations covered by the application made to the commission in accordance with the provisions of this chapter, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules and regulations of the commission thereunder, and that the proposed service to the extent authorized by the permit, is or will be required by the present or future public convenience and necessity.

In considering public convenience and necessity the commission shall, prior to the issuance of a permit, consider the effect of such proposed motor carrier operation upon the operations of any authorized common carrier then operating over the routes or in the territory sought. The mere existence of a common carrier in the territories sought who possesses authority similar to that sought shall be insufficient cause to deny the issuance of the permit."

In its order granting respondents a motor common carrier permit, the Commission specifically found respondents fit, willing and able to perform the service proposed and that the service is or will be required by the present or future public convenience and necessity.

■ This Court will not weigh the evidence, but reviews the record to ascertain if the conclusions reached are supported by competent evidence. "The Commission's ruling will be reversed only when it appears that it has failed to follow the law or has abused its discretion." [1]

In accord with this standard, appellants argue on their first assignment of error that the Commission abused its discretion and erred as a matter of law in determining that respondents were qualified for a permit as a common carrier. Appellants contend that this Court must decide as a matter of law whether the Commission properly applied the definition of a common carrier to the evidence before it.

1. *Intermountain Gas Co. v. Idaho Public Utilities Comm.*, 97 Idaho 113, 540 P.2d 775 (1975); *Key Transportation, Inc. v. Trans Magic Airlines Corp.*, 96 Idaho 110, 112, 524 P.2d 1338, 1340 (1974); *Grover v. Ace Equipment Co.*, 94 Idaho 674, 676, 496 P.2d 673 (1972); *Kent v. Idaho Public Utilities Commission*, 93 Idaho 618, 620, 469 P.2d 745 (1970); *Application of Forde L. Johnson Oil Co.*, 84 Idaho 288, 298, 372 P.2d 135 (1962); *Application of Bermensolo*, 82 Idaho 254, 259, 352 P.2d 240 (1960).

Appellants cite much authority defining a "common carrier." However, for the purposes of the Motor Carrier Act, the Legislature has enacted a sufficient definition of a "common carrier,"[2] by which we are bound. Essentially appellants argue that the Commission erred in applying the definition of common carrier to respondents because respondents' business at the time of their application and the hearing was largely divided between contract and private carrier work.[3] We cannot agree that the Commission erred.

There was no error of law in granting a common carrier permit to an applicant whose previous business operations were not conducted as a common carrier. It is illegal for an applicant for a permit to develop a business of the character for which the permit is sought prior to the issuance of the permit under which the business may be lawfully conducted. As shown in the requirements of § 61–802, an applicant may obtain a permit upon a proper showing that the proposed service will be required by the future public convenience and necessity.

Appellants also argue that the evidence is insufficient to support the Commission's finding that respondents are fit, willing and able properly to perform the service proposed. It was a question of fact for the Commission to determine whether respondents intended to perform and were fit, willing and able to perform as a common carrier, as that term is defined by § 61–801(f).[4] We have examined the record and find there is competent evidence to support the Commission's conclusion. That conclusion will not be disturbed on appeal.

Appellants allege in their second assignment of error that the evidence is insufficient to support the Commission's finding that the service proposed by respondents is or will be required by the present or future public convenience and necessity. Respondent Ronald W. Pugh testified that respondents had declined requests for their services because they were not a common carrier permit holder. Respondents also introduced testimony from four witnesses who had need for the services of a common carrier that there was insufficient common carrier service available and that the business concerns represented by the witnesses anticipated increased demand for common carrier service in the future. This is competent evidence to support the Commission's finding, and the Commission's order shows it was carefully considered.[5]

Appellants' third assignment of error alleges the Commission erred in failing to find that existing common carrier permit holders would adequately serve any public demand for the service proposed by respondents. Appellants argue that § 61–802 requires permit applicants to show the proposed service is not adequately being performed by common carriers operating over the routes or in the territory sought. Appellants submit that respondents introduced no direct evidence of inadequate existing service.

We do not agree with appellants' contention that § 61–802 places the burden on permit applicants to show that existing service is inadequate. In *Application of Forde L. Johnson Oil Co.,*[6] the appellants-protestants argued that the burden of proof was upon applicants to show the pro-

---

2. § 61–801(f), Idaho Code, provides: "The term 'common carrier' means any person, which holds itself out to the general public to engage in the transportation by motor vehicle in commerce in the state of Idaho of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes."

3. *See* §§ 61–801(g) and (h), Idaho Code.

4. *See Smallwood v. Jeter,* 42 Idaho 169, 186, 244 P. 149 (1926).

5. *See Grover v. Ace Equipment Co., supra* note 1, 94 Idaho at 676, 496 P.2d 673.

6. *Supra* note 1, 84 Idaho 288, 372 P.2d 135 (1962).

posed service is or will be in the public interest, after the Commission had found that " . . . protestants did not show that they had or would have any definite substantial loss of intrastate traffic revenue." This Court held:

"It is true that no duty rests upon protestant to show anything, however if a protestant desires that the Commission be informed as to the effect which the granting of the application will have upon him, it is incumbent upon the protestant to make such showing. Not only are the capabilities of the protesting carriers matters which are peculiarly within their knowledge, it could hardly be expected that applicant would be interested in introducing evidence tending to show that the granting of his application would have an adverse effect upon the carrier industry. There is no presumption that the service of existing carriers would be adversely affected by loss of potential traffic, especially if they have not handled it before. This Court has decided that no duty rests upon the Commission to protect the status quo of existing carriers, but it is required to consider the interest of the public. (Citations omitted.)" [7]

Shortly after this decision the Legislature amended § 61–802 by adding the last paragraph, which reads:

"In considering public convenience and necessity the commission *shall,* prior to the issuance of a permit, consider the effect of such proposed motor carrier operation upon the operations of any authorized common carrier then operating over the routes or in the territory sought. The mere existence of a common carrier in the territories sought who possesses authority similar to that sought shall be insufficient cause to deny the is-

suance of the permit." (Emphasis supplied.) [8]

The Legislature intended the amendment of § 61–802 to clarify the duty of the Commission and to advance the public interest in situations where an applicant proposes carrier service supplementing existing operations. *Application of Forde L. Johnson Oil Co., supra.*[9]

█ Prior to the amendment and pursuant to the decision in *Application of Forde L. Johnson Oil Co.,* the Commission was not under a duty to consider the potential impact of additional carriers on existing permittees. Existing carriers had to come forward with evidence of any adverse effect, *e. g.,* that existing service was adequate and would be adversely affected by allowing additional carriers. The Legislature by using the word "shall" has made consideration by the Commission of the effect of new carriers on existing operations mandatory.[10] This is consistent with the opinion of this Court in *Forde L. Johnson* requiring the Commission "to consider the interest of the public," and noting that applicants would not be likely to introduce evidence of any adverse effect resulting from the grant of a permit.

█ However, existing carriers are not entitled to a presumption that existing service is adequate and would be adversely affected by the presence of additional carriers. The last sentence of § 61–802 as amended adopts this principle, which was stated by this Court in *Forde L. Johnson* (quoted above). Thus, existing carriers wishing to inform the Commission of the effect which granting of the permit will have upon them, would be well advised to supplement the Commission's statutorily required consideration of possible effects through an independent showing. Expeditious disposition of proceedings before the

---

7. *Id.* at 293, 372 P.2d 135, at 137.

8. S.L.1963, ch. 160, § 3, p. 463.

9. *Application of Forde L. Johnson Oil Co., supra* note 6.

10. *Goff v. H. J. H. Co.,* 95 Idaho 837, 839, 521 P.2d 661 (1974).

Commission requires that notice be given of a protestant's intended appearance and reliance upon alleged adverse results from the grant of the permit, and that the evidentiary showing be made at the earliest opportunity.

The Commission is charged by § 61–802 with the duty of considering the effect of new carrier service on existing operations in the course of its consideration of public convenience and necessity. Appellants gave notice of their protest but did not state the grounds thereof, and did not introduce evidence of any adverse effect upon themselves until their petition for rehearing. The Commission had before it evidence that there were insufficient common carriers providing the service respondents proposed and that an increase in the demand for such service was anticipated in the future. Pursuant to its statutory duty, the Commission found the service proposed by respondents is or will be required by the present or future public convenience and necessity. On the evidence before the Commission, it is implicit in this finding that the Commission determined there would be no adverse effect upon appellants as a result of granting respondents the permit. Since the Commission has complied with the requirement of § 61–802 as amended, and since its determination is supported by substantial and competent evidence, we find no error in the Commission's failure to find the service provided by appellants adequate.

11. Sup.Ct.Rule 41, subd. 2; *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 586, 513 P.2d

Appellants' fourth assignment of error is that the Commission erred when it authorized respondents to serve that area within Idaho north of the Salmon River. Appellants argue that the amount of territory is unjustified because respondents' previous trucking activities did not extend throughout the area. As discussed above, respondents' prior business operations are not determinative of the kind or extent of business operations for which the Commission may issue a permit upon a proper showing. The majority of the territory authorized for service by the permit coincides with the area in which respondents operated. Authorization of a recognized geographical area for service is reasonable where an applicant shows a need for its services within a substantial portion of the geographical area. The Commission's determination is supported by substantial and competent evidence and will not be disturbed on appeal.

As their final assignment of error appellants argue the Commission erred in denying their petition for rehearing. This assignment of error is unsupported by either argument or authority and therefore will not be considered on appeal.[11]

The order of the Public Utilities Commission is *affirmed.*

Costs to respondents.

McFADDEN, DONALDSON, SHEPARD and BAKES, JJ., concur.

627 (1973); *Church v. Roemer*, 94 Idaho 782, 498 P.2d 1255 (1972).