551 P.2d 618

**ASSOCIATED PACIFIC MOVERS, HOUSE-MOVERS, INC., and Granvil P. McAlister, Appellants,**

v.

**Tom ROWLEY, dba Rowley Trucking, and Idaho Public Utilities Commission, Respondents.**

Application of Tom ROWLEY, dba Rowley Trucking, Burley, Idaho, for a Motor Contract Carrier Permit.

Application of Tom ROWLEY, dba Rowley Trucking, Burley, Idaho, for Temporary Authority to Transport Houses.

No. 11826.

Supreme Court of Idaho.

June 25, 1976.

Larry D. Ripley, Elam, Burke, Jeppesen, Evans & Boyd, Boise, for appellants.

Callis A. Caldwell, Johnson & Olson, Pocatello, for respondent Rowley Trucking.

Wayne L. Kidwell, Atty. Gen., Dan L. Poole and Gary L. Montgomery, Asst. Attys. Gen., State of Idaho, for respondent Idaho Public Utilities Commission.

McFADDEN, Chief Justice.

Tom Rowley, dba Rowley Trucking, applied to the Idaho Public Utilities Com-

mission for a motor contract carrier permit to move houses over irregular routes within Idaho. After a hearing, the Commission denied his application and Rowley did not file a petition for a rehearing. Later, he submitted a second application to the Commission, again seeking the same statewide authority. The Commission conducted a hearing on the second application, after which it awarded Rowley a permit to move houses over irregular routes in Idaho, but only south of the Salmon River. The protestants to the application petitioned for a rehearing, which the Commission denied, and then appealed to this court. We affirm.

At the hearing on the second application, ten witnesses, including Rowley himself, testified in favor of the permit being granted. The nine witnesses other than Rowley all testified as to their difficulties in seeking and obtaining the services of authorized housemovers. Two of those witnesses were officers of Olympic Homes, Inc., who testified not only about the company's past difficulties in obtaining housemoving services for its prefabricated homes constructed at its Pocatello plant, but also about the continuing need for such services. The protestants to the application, housemovers holding existing authority from the IPUC, testified that they were ready, willing, and able to provide all the housemoving services required in Idaho. The Commission relied upon and cited the evidence presented at the hearing to find that Rowley was fit, willing, and able to perform the proposed service, as required by I.C. § 61–802,[1] that a lack of aggressive competition existed in the housemoving industry in Idaho south of the Salmon River, and that the authority awarded to Rowley in the permit was required by present or future public convenience and necessity, as required by I.C. § 61–802.

On appeal, the appellants challenge the award of the housemoving permit on the ground that Rowley's second application and the hearing thereon amounted to a collateral attack on the first order of denial and thereby violated I.C. § 61–625, which provides: "All orders and decisions of the commission which have become final and conclusive shall not be attacked collaterally." However, the legislature also enacted I.C. § 61–624[2] to provide the IPUC the authority to rescind, alter, or amend a prior order or decision upon compliance with that statute's procedures. Any modification of an order under I.C. § 61–624 arguably could be a collateral attack on that order, but such an interpretation would bring those two consecutive statutory sec-

---

1. I.C. § 61–802 provides:
   "It shall be unlawful for any motor carrier, as the term is defined in this chapter, to operate any motor vehicle in motor transportation without first having obtained from the commission a permit covering such operation. A permit shall be issued to any qualified applicant authorizing the whole or any part of his operations covered by the application made to the commission in accordance with the provisions of this chapter, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules and regulations of the commission thereunder, and that the proposed service, to the extent authorized by the permit, is or will be required by the present or future public convenience and necessity.
   In considering public convenience and necessity the commission shall, prior to the issu-

   ance of a permit, consider the effect of such proposed motor carrier operation upon the operations of any authorized common carrier then operating over the routes or in the territory sought. The mere existence of a common carrier in the territories sought who possesses authority similar to that sought shall be insufficient cause to deny the issuance of a permit."

2. I.C. § 61–624 provides:
   "The commission may at any time, upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any order or decision made by it. Any order rescinding, altering or amending a prior order or decision shall, when served upon the public utility affected, have the same effect as is herein provided for original orders or decisions."

tions into direct conflict, a result we cannot support. The Arizona Supreme Court, in *Davis v. Corporation Commission*, 96 Ariz. 215, 393 P.2d 909 (1964), rejected the argument that the modification of the commission's previous order was a collateral attack under that state's statute comparable to I.C. § 61–624. The court stated:

"There is no merit in appellants' argument that this case involves a collateral attack on the prior order of the Commission, which is prohibited by the final sentence of A.R.S. § 40–252. This court has held that 'collateral attack' as used in that section means an attack such as an application for injunctive relief against an order of the Commission. [Citations omitted]. An application to the Commission to rescind, alter or amend an order, pursuant to A.R.S. § 40–252 does not constitute a collateral attack upon an order of the Commission." *Id.* at 911–12.

■ The statutory authorization for subsequent rescission or modification of an order or decision, contained in I.C. § 61–624, implies the authority of the IPUC to grant a hearing on a new application for a permit denied in a previous order. *Brook Ledge, Inc. v. Public Utilities Comm'n*, 145 Conn. 617, 145 A.2d 590 (1958).

■ In relation to this same argument, the appellants further contend that the Commission allowed Rowley to collaterally attack its initial denial by allowing him to introduce at the hearing on the second application evidence that was available to him at the time of the earlier denial. The appellants have not demonstrated what evidence offered at the second hearing was available to Rowley at the time of the initial proceeding. Moreover, the testimony of some of the nine witnesses indicates that their testimony was unavailable to Rowley earlier. Thus, the appellants failed to establish the premise for this portion of their argument about a collateral attack.

For the reasons discussed above, it is the conclusion of this court that Rowley's second application and the hearing thereon did not constitute a collateral attack on the Commission's earlier order that denied him a motor contract carrier permit.

■ The appellants further contend that, if the second application and hearing were valid, the evidence presented at the hearing failed to support the Commission's finding that the present or future public convenience and necessity required Rowley's housemoving services. The findings of the IPUC will be sustained by this court when competent, substantial, although conflicting evidence supports them. *Hartwig v. Pugh*, 97 Idaho 236, 542 P.2d 70 (1975); *Application of Bermensolo*, 82 Idaho 254, 352 P.2d 240 (1960). While recognizing this rule, the appellants nonetheless contend that the evidence submitted on behalf of Rowley was not competent because it concerned past, rather than present or future, difficulties in obtaining the services of an authorized housemover. The court disagrees.

■ This court has recognized that what constitutes public convenience and necessity for the services of a motor carrier depends on the particular circumstances of each case. *Application of Bermensolo, supra.* Some types of motor carrier applications require the consideration of evidence regarding past incidents and recent events to determine whether the proposed service is required by present or future public convenience and necessity. The nature of the housemoving industry whereby customers generally do not seek such services on a regular or even intermittent basis, establishes the relevancy of such evidence. A repeated, recent failure of service is strong evidence that the present or future public convenience and necessity require additional competition within a geographical area. Furthermore, the two witnesses who were officers of Olympic Homes, Inc., testified not only about the corporation's past difficulties in obtaining the services of an authorized housemover, but also about the company's continuing need

for the services of a professional mover. The appellants frame their argument as a challenge to the competency of the witnesses' testimony, but the substance of their argument is a challenge to the relevancy of that testimony. As stated above, the testimony is relevant because of its probative value. The appellants really do not argue that the testimony is incompetent, i. e., that it exhibits some legal disability which precludes its admission. This court therefore concludes that the witnesses presented competent evidence that supports the Commission's finding of a present or future public convenience and necessity to justify the award of the permit to Rowley.

 The appellants finally contend that the evidence presented at the hearing did not support the Commission's finding of a lack of aggressive competition in the housemoving industry in Idaho south of the Salmon River. They argue that, at best, the evidence only supported a finding of such a lack of competition in the ten counties of southeastern Idaho. Again, the findings of the IPUC will be upheld on appeal when competent, substantial, although conflicting evidence supports them. *Application of Bermensolo, supra.* The evidence presented at the hearing meets that standard and supports the Commission's finding of a lack of aggressive competition in the housemoving industry in the counties south of the Salmon River. The nine witnesses who supported Rowley's second application testified about their problems with most authorized housemovers who operate in southern Idaho. They specifically testified about difficulties in ten southeastern counties and the representatives of Olympic Homes, Inc., testified that they expected to send homes throughout the southern portion of the state. The demonstrated lack of competition among the housemovers in those ten counties justified the Commission in finding a lack of aggressive competition throughout the area in which those same movers worked, i. e., the counties south of the Salmon River. A satisfactory showing of present or future public convenience and

necessity need not include a specific showing for every point included within a grant of authority. *Hartwig v. Pugh,* 97 Idaho 236, 542 P.2d 70 (1975). This court therefore concludes that the Commission did not abuse its discretion in awarding Rowley a permit to move houses over irregular routes in Idaho south of the Salmon River. *Grover v. Ace Equip. Co.,* 94 Idaho 674, 496 P.2d 673 (1972).

Order affirmed. Costs to the respondents.

DONALDSON, SHEPARD and BAKES, JJ., and SCOGGIN, District Judge (retired), concur.