755 P.2d 1285

Hugh McNICHOLS and Lorena "Peggy" Smith, Plaintiffs–Respondents,

v.

PUBLIC EMPLOYEE RETIREMENT SYSTEM OF IDAHO, Public Employee Retirement Board of Idaho; Robert H. Venn, Executive Director of Public Employee Retirement System in his official and personal capacity; J. Allen Jensen, in his official and personal capacity; Joe R. Williams, in his official and personal capacity; Thomas V. Campbell, in his official and personal capacity; Richard A. Vasser, in his official and personal capacity; Maria Eschen, in her official and personal capacity, Defendants–Appellants.

No. 16796.

Supreme Court of Idaho.

May 20, 1988.

Rehearing Denied June 28, 1988.

Jim Jones, Atty. Gen., and David G. High, Deputy Atty. Gen., argued, Boise, for defendants-appellants.

Howard G. Berringer, Boise, for plaintiffs-respondents.

McFADDEN, Justice, Pro Tem.

The principal issue presented in this case is whether the legislature can prospectively reduce the rate at which public employees earn retirement benefits. The district court in a summary judgment proceeding held our decision in *Nash v. Boise City Fire Department*, 104 Idaho 803, 663 P.2d 1105 (1983), prohibited a modification. The Public Employee Retirement System of Idaho (PERSI) brought this appeal arguing the district court incorrectly interpreted *Nash*. For reasons explained below we reverse and remand.

The plaintiffs, Hugh McNichols and Peggy Smith, are public employees and members of the Public Employee Retirement System. McNichols has been employed by the Boise City Police since March 3, 1967. Initially, he was employed as a patrolman, and continued to work in various patrol functions until 1980, when he was transferred to the Intelligence Unit. Shortly thereafter, he was transferred back to a patrol job, where in 1982 he was injured when a city bus collided with his patrol car. The accident left McNichols with permanent injuries, and since his return to work in 1984, he has worked as the Police Department's Supply Officer.

Smith is employed by Ada County. She began her employment with the County on March 1, 1968, as a deputy sheriff. She is a sworn non-commissioned deputy sheriff. She has served primarily as a clerical employee in the drivers license section, although for a number of years she also acted as a matron and carried a weapon. Both Smith and McNichols, since their original hire date, have been classified as police officer members for the retirement system's purposes.

Since its inception in 1963, the Public Employee's Retirement System has differentiated between police officer members [1] and general members. A police officer member is required to contribute more of his or her salary to the pension fund than a general member; however, police officer members are eligible for earlier retirement.

Until July 1, 1985 the police officer category for retirement purposes was defined in I.C. § 59–1302(24) as "an employee engaged in hazardous law enforcement duties as determined by the board...." The Retirement Board (the statutorily created body to administer the retirement system) (hereinafter referred to as "the Board"), customarily allowed the employer to determine whether the individual employees were engaged in hazardous law enforcement duties to qualify for police officer classification. The Board adopted the position that the employer, rather than the Board, understood the particular job requirements and was better able to categorize the employees as police officer members or general members. Due to this delegation by the board, the Boise City Police and the Department of Law Enforcement classified McNichols and Smith as police officer members respectively. However, the individual agencies administered the program under inconsistent standards. According to the affidavit of Robert H. Venn,

---

1. The statutory enactments also have a classification for firemen members, who are treated the same as police officer members. The firemen member category is not relevant to this case, thus it is not discussed in the opinion.

Director of the Retirement Board, this resulted in numerous inequities in the pension system as a whole. For example, secretaries at the Department of Law Enforcement were classified as police officer members, but secretaries down the hall at the Department of Transportation were classified as general members.

In response to the problem, the legislature enacted I.C. § 59–1302A, effective July 1, 1985. The statute delineates various employee positions to be included within police officer status and sets up a procedural mechanism whereby the employer of those employees not statutorily designated may petition the Retirement Board for inclusion. (I.C. § 59–1302A(5)).

Neither McNichols' nor Smith's position was included within the statutory definition of police officer status. Requests for inclusion on behalf of McNichols and Smith were filed before the Retirement Board. After a hearing, the Board adopted Findings of Fact, Conclusions of Law and Order denying the request for inclusion.

McNichols and Smith filed a complaint in district court seeking a declaration that I.C. § 59–1302A is unconstitutional and that the plaintiffs' equal protection and due process rights have been violated. PERSI, by answer, denied the allegations and filed a third-party complaint against the Boise City Police, for failure to inform PERSI of McNichols' earlier transfer to a non-hazardous position. Both parties moved for summary judgment. The district judge, relying on *Nash v. Boise City Fire Department*, 104 Idaho 803, 663 P.2d 1105 (1983), issued a Memorandum Opinion and ruled that the reclassification of McNichols and Smith was invalid. PERSI brings this appeal.

*Nash* dealt with a legislative amendment to the Firemen's Retirement Fund Act. I.C. § 72–1401 et seq. Prior to the amendment the retirement payments were tied to the cost-of-living adjustment as set forth in I.C. § 72–1432B. The amendment enacted in 1978 placed a three percent cap on the annual increase. Nash, a fire fighter who retired in 1978, filed a claim with the Industrial Commission seeking payment for the benefits with no cap placed on the cost-of-living increases, and a declaration that the three percent cap was unconstitutional. The commission ordered the Firemen's Retirement Fund to pay the benefits without regard to the three percent cap. The Fund appealed to this Court.

This Court held that the three percent cap could not be applied to Nash because the legislature cannot limit previously earned benefits. *Nash* is a correct application of the compensatory theory of public employee pension plans, which this Court adopted in *Hansen v. City of Idaho Falls*, 92 Idaho 512, 446 P.2d 634 (1968).

In *Hansen*, several former police officers brought an action to recover the amounts deducted from their salaries for the policemen's retirement fund contending that the law creating the fund was unconstitutional. Specifically, the police officers alleged that the statutory enactment required the city to incur an indebtedness in contravention of art. 8, § 3[2] of the Idaho Constitution. This Court held that the portion of a police officer's salary withheld for retirement benefits is a ordinary and a necessary expense, because it is a form of compensation. Thus, art. 8, § 3 was satisfied. In that opinion it is stated that

---

**2.** Art. 8, § 3 of the Idaho Constitution reads in pertinent part as follows:

　°§ 3. **Limitations on county and municipal indebtedness.**—No county, city, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two thirds (⅔) of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at

the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within thirty (30) years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: Provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state. . . .

[t]he better reasoned rule in most American jurisdictions today is that the rights of the employees in pension plans such as Idaho's Retirement Fund Act are vested, subject only to reasonable modification for the purpose of keeping the pension system flexible and maintaining its integrity. Since the employee's rights are vested, the pension plan cannot be deemed to provide gratuities. Instead, it must be considered compensatory in nature. *Id.* at 514, 446 P.2d at 636.

The respondents argue that the legislative modification here does not meet the tests of *Hansen* and *Nash*. In *Hansen*, the issue was the constitutionality of the creation of a retirement system for the Idaho Falls city police officers. In *Nash*, the issue is whether the state could defer cash payments to an individual retiree. Here, the issue is whether the state can reduce the rate at which the employees *earn* retirement benefits. This issue was not addressed in either *Hansen* or *Nash*. In order to answer this question we must examine the operation of the Idaho Public Employees Retirement Act.

The Act was created in 1968 to "provide an orderly means whereby public employees in the state of Idaho who become superannuated or otherwise incapacitated as the result of age or disability, may be retired from active service without prejudice and without inflicting hardship upon the employees retired...." I.C. § 59–1301. Since its inception, the Act has distinguished between police officer members and general members. In the 1963 statutes, and with little modification since, police officer members were defined as an "employee engaged in hazardous law enforcement duties as determined by rules of the board." I.C. § 59–1302 (1963 Sess. Laws, ch. 349, art. 1, § 2, p. 988). Police officer members are required to make a higher monthly contribution with their annual salary to the retirement system, I.C. §§ 59–1304 and 1305, and an employee with a police officer status earns accrued retirement benefit at a higher rate. I.C. § 59–1319.

The important section for purposes of this appeal is I.C. § 59–1302(24), as it read before the 1985 statutory modification. This section defined police officers as "an employee engaged in hazardous law enforcement duties as determined by the board, or employees of the adjutant general and military department of the state." The board delegated its authority to the individual agencies to determine and classify whether specific employees fell within the "police officer" category. As such, the Boise City Police Department and the Ada County Sheriff's Department classified McNichols and Smith respectively as police officer members. McNichols, since 1984, has held the position as supply officer, and Smith for the past eighteen years has been the supervisor in the records section of the Ada County Sheriff's Department. PERSI in 1985 began to correct these and other errors in the classification system. However, the legislature completed the process with the 1985 modifications in 1985 Idaho Sess. Laws, ch. 84, § 2, p. 164.

The 1985 enactments designated a number of positions as police officer members. I.C. § 59–1302A(3). The new legislation also included a catch-all description for police officer members. I.C. § 59–1302A(4)(a) states:

(a) For purposes of this section, "hazardous law enforcement duties" mean principal duties which:

(i) Will reasonably expect to increase the probability of early superannuation;

(ii) Is associated with life-threatening risk or presents a position of peril either to the member or to others, or which can place the public safety in jeopardy; and

(iii) Either compels others to observe the law, pertains to crime prevention, or pertains to crime reduction, including police, courts, prosecution, correction, or rehabilitation.

The new law expressly provides that occasional assignments to hazardous law enforcement duties would not alter the classi-

fication of a general member to police officer member. I.C. § 59–1302A(4)(c).

Neither Smith, since 1968, nor McNichols, since 1984, has been actually engaged in "hazardous law enforcement duties" despite being given that classification. In essence, the Boise City Police Department and the Ada County Sheriff's Department, through the power delegated from PERSI, has erroneously interpreted the prior statute, I.C. § 59–1302(24). An administrative agency has some discretion in interpreting statutes, but it may not alter or amend an enactment, and its interpretation must be within the framework and policy of the statute. *Idaho Compensation Company v. Hubbard,* 70 Idaho 59, 211 P.2d 413 (1949). Certainly, the legislature has the power to clarify its statutory enactments through further legislative enactments. Here, in effect, PERSI had classified Smith and McNichols as police officers for retirement purposes. The legislature responded by directing PERSI to classify these two and all similarly situated employees as general members. It does not seem logical to hold that once an administrative agency misinterprets a legislative mandate, the legislature is powerless to alter or amend the misinterpretation. Thus, prospectively from July 1, 1985, Smith and McNichols would continue to earn retirement benefits, but only at the general member rate, and not at the rates previously earned while classified as a "police officer member."

Finally, we note that we do not have to address the issue of whether the legislature may modify previously earned benefits. The 1985 statute specifically provides that previously earned benefits accrued in error will not be reduced. I.C. § 59–1302A(7) provides:

> (7) An active member classified as a police officer for retirement purposes whose position is reclassified to that of a general member for retirement purposes as a result of a determination that the position does not meet the requirements of this chapter for police officer status

for retirement purposes shall become a general member but shall not lose retirement benefits earned and accrued prior to the reclassification. If that member continues to be employed in that same position until retired, that member then will be deemed to be a police officer member for the purposes of retirement eligibility.

Thus, the earned and accrued benefits of McNichols and Smith are preserved by statute, even if initially accrued in error.

Upon retirement McNichols and Smith shall be entitled to retirement benefits based on their service as "police officers" up until July 1, 1985, and thereafter based on benefits as "public employees."

Costs to respondents.

No attorney fees on appeal.

BAKES, J., and SWANSTROM, J., pro tem., concur.

HUNTLEY, Justice, dissenting.

I respectfully dissent. These employees entered employment and provided their services under an employment situation where they were to have the opportunity to accumulate retirement benefits at a rate of 4% per year. Drawing that back by changing their titles is a shabby process, at best, which exalts form over substance and conflicts with our holding in *Nash v. Boise City Fire Dept.,* 104 Idaho 803, 663 P.2d 1105 (1983).

BISTLINE, J., concurs.